UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JESSICA MARKS

VERSUS

LOUISIANA ASSOCIATION
OF EDUCATORS

CIVIL ACTION

NO. 08-573-BAJ-CN

# RULING ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a motion for summary judgment filed by defendant, Louisiana Association of Educators ("Defendant" or "LAE") (doc. 21). Plaintiff, Jessica Marks ("Plaintiff"), opposes Defendant's motion (doc. 34). Defendant has filed a reply to Plaintiff's opposition (doc. 40). Jurisdiction is based on 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## BACKGROUND

Pursuant to Local Rule 56.1, Defendant has set forth the following facts that it claims are material to the present motion for summary judgment (doc. 21-3).[1] Plaintiff, however, has not controverted those facts as required by LR56.2.[2]

---

[1] The Court notes that LR56.1 requires the statement of material facts to be "short and concise." Defendant's statement of material facts is 19 pages and includes 143 statements of material fact (doc. 21). As such, those facts are not produced herein in their entirety.

[2] The Court notes that rather than offering declaratory statements of contested issues, Plaintiff filed a list of 52 questions entitled "Jessica Marks' Statement of Disputed Fact Issues" (doc. 38). However, those questions do not controvert the material facts set forth in Defendant's statement of undisputed facts, which are supported by citations to evidence in the record.

Therefore, pursuant to Local Rule 56.2, Defendant's statement of undisputed material facts is deemed admitted for purposes of the motion.[3]

Plaintiff began working as the Director of Communications and Technology for Defendant in June of 2005 (doc. 25, p. 3). She alleges that Defendant's Executive Director, David Hunt ("Hunt"), discriminated against her on the basis of sex, sexually harassed her, and wrongfully terminated her employment on March 15, 2008. Plaintiff's claims arise under the Louisiana Anti-discrimination Statute and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, *et seq.* She also asserts a state law claim of intentional infliction of emotional distress (Doc. 4, p. 2).

Defendant, an affiliate of the National Education Association, is a professional association for educators and education support professionals. It describes its missions as the promotion of quality public schools, strengthening of the education profession, and the improvement of the wellbeing of its members. (Doc. 25, pp. 1-2). At the time of Plaintiff's termination, Bruce Hunt ("Hunt") was the executive director, and Lee Berg ("Berg"), who hired Plaintiff, was the interim executive director (doc. 21-3, ¶ 10, 11). As the Director of

---

[3] Uniform Local Rule 56.2 provides:
> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

2

Communications and Technology, Plaintiff held one of the five manager positions at LAE (doc. 21-3, ¶ 13). Plaintiff was responsible for all external and internal communications, including but not limited to, the publication of Defendant's monthly newsletter, drafting the contents of its website, issuing press releases and recruitment materials, and organizing promotional events (doc. 21-3, ¶ 27).

On December 4, 2007, Plaintiff's attorney sent a letter to the Equal Employment Opportunity Commission ("EEOC") alleging that Hunt discriminated against her based on sex and that he sexually harassed her. However, Plaintiff admitted that she had not reported discrimination to anyone at LAE (doc. 21-3, ¶ 96, 97). Subsequently, LAE investigated Plaintiff's complaint (doc. 21-3, ¶ 100). LAE's president produced a memorandum that detailed the results of the investigation, and the memorandum was given to both Plaintiff and Hunt (doc. 21-3, ¶ 102). The investigation concluded that: (1) Plaintiff's "allegations of discrimination and harassment had no merit"; (2) there was friction between Plaintiff and Hunt; and (3) Hunt used profane language "on occasion in the workplace" but such language was not directed at Plaintiff (doc. 21-3, ¶ 103).

Defendant asserts that it arranged for an independent facilitator to work with Plaintiff and Hunt to help restore their relationship, and that both parties initially participated in those efforts (doc. 21-3, ¶ 106, 107).[4] Although Plaintiff

---

[4] Plaintiff alleges that the independent facilitator was not "completely independent" as Defendant is a state affiliate of the facilitator's employer (doc. 34, p. 5).

3

insisted that the sessions be recorded, Hunt refused to participate if the sessions were tape recorded (doc. 21-3, ¶ 108, 109).

Defendant admits that, on March 15, 2008, it terminated Plaintiff's employment because of "poor performance and her consistent failure to meet the Board's legitimate expectations" (doc. 25, p. 11). Defendant asserts that Plaintiff's poor performance included, *inter alia*: (1) the presence of errors in spelling and grammar in publications and promotional materials Plaintiff produced; (2) the failure to meet her publication deadlines; (3) the failure to oversee the website, keep it current, and proofread the copy; (4) the failure to publicize LAE's accomplishments and sponsored events; and (5) the refusal to publicize LAE's position on the Jena Six case because Plaintiff "had a relative in the school district and family in the area." (Doc. 25, pp. 13-22). Plaintiff responded by claiming that neither the minutes of the board meeting, nor the termination letter from LAE mentioned a reason for her termination (doc. 34, pp. 5-6).

## LAW AND DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

4

purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A) and (B).

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113 F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). The plaintiff, in an employment discrimination case, bears the burden of proving that she has been the victim of intentional discrimination." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 2747-78, 125 L.Ed.2d 407 (1993). The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Louisiana courts look to federal Title VII jurisprudence to interpret Louisiana discrimination laws. *King v. Phelps Dunbar, L.L.P.*, 743 So.2d 181, 187 (La.1999) (citing *Bustamento v. Tucker*, 607 So.2d 532, 538, n. 6 (La.1992)); *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 2004). Therefore, the analysis applicable to Plaintiff's Title VII claims also governs Plaintiff's state claims. Title VII, 42 U.S.C. § 2000e-2(a), provides in pertinent part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .

Plaintiff asserts that Defendant is liable under both federal and state law for discrimination and harassment based on her sex, wrongful termination, retaliation, and for intentional infliction of emotional distress in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Louisiana Anti-Discrimination statute (doc. 25, p. 6).

## **Barred Claims**

To file suit under Title VII, as required by 42 U.S.C. § 2000e-5(e)(1), a plaintiff must file a charge of employment discrimination with the EEOC or state administrative agency within 300 days of the occurrence of the alleged discriminatory conduct. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 521 (5th Cir. 2008); *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 398 (5th Cir. 2007). "This Circuit has long required plaintiffs to exhaust their administrative

6

Case 3:08-cv-00573-BAJ -CN   Document 42   08/19/11   Page 6 of 15

remedies before bringing suit under Title VII." *Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 595, 598 (5th Cir. 2006). *See also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor*, at 379. Plaintiff filed her charge of discrimination with the EEOC on December 4, 2007. [5] Accordingly, any Title VII claim based on discriminatory conduct that allegedly occurred prior to February 7, 2007 (300 days before December 4, 2007) is untimely and will not be considered by the Court.

Pursuant to Louisiana law, a claim of discrimination is a delictual action "subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La. Civ. Code Ann. art. 3492; *Eastin v. Entergy Corp.*, 865 So.2d 49, 53 (La. 2004). However, "this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission. . . . No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months." La. Rev. Stat. § 23:303(D). Defendant alleges that "any claim under the Louisiana Employment Discrimination law for discrete acts of discrimination arising prior to January 3, 2007 (one year plus six months) are also prescribed"

---

[5] The Court notes that Plaintiff sought to amend her December charge to allege wrongful termination and retaliation in a letter written by her attorney, dated March 19, 2008, to the EEOC (doc. 21-3, ¶ 142). However, Plaintiff did not file a supplemental charge or formally amend her charge, and on April 7, 2008, Plaintiff completed and signed a Charge of Discrimination alleging *only* sex discrimination and sexual harassment. Therefore, Plaintiff's claims are limited to sex discrimination and sexual harassment.

7

(Id). As the Supreme Court of Louisiana has noted, "it is well settled that the damage is sustained in any employment discrimination case at the earlier of the date the employee is informed of his termination or his actual separation from employment. *Eastin*, at 53-54.

### Sex Discrimination Claims

Title VII prohibits an employer from discharging or otherwise discriminating against any individual because of that individual's sex. 42 U.S.C. § 2000e-2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir.2004). Intentional discrimination can be established through either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir.2001). Because Plaintiff presents no direct evidence of discrimination, her claim is analyzed using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case. *Id.* The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'"

*Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Rachid,* 376 F.3d at 312.

To establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." *Alvarado v. Texas Rangers,* 492 F.3d 605, 611 (5th Cir. 2007).

Assuming, without deciding, that Plaintiff has established a *prima facie* case, Plaintiff has failed to set forth evidence to show that the reasons given by Defendant were a pretext for discrimination. The only adverse employment action Defendant took against Plaintiff was terminating her employment. According to Defendant, Plaintiff's employment was terminated because of her

9

poor job performance. (doc. 25, p. 11). Defendant further alleged that Plaintiff, inter alia[6]:

- Released a brochure for a membership campaign that used the word "pubic" instead of "public." (Doc. 21-3, ¶ 33).

- Ordered Defendant's promotional pens, and mistakenly put the telephone number for a pornographic telephone service on the pen instead of Defendant's toll-free number. (Id, at ¶ 35).

- Failed to proofread and approve the publication of The LAE Voice before leaving for vacation, and left no instructions for fulfilling the publication deadline in her absence. (Doc. 21-3, ¶ 58).

- Failed to arrange press coverage for LAE's summer leadership conference. (Doc. 21-3, ¶ 66).

- Failed to properly maintain Defendant's website: the calendar included incorrect dates for Executive Committee and Board meetings and failed to include significant upcoming events; did not include copies of the most recent editions of The LAE Voice; had links that did not work; and featured old and outdated stories and news articles. (Doc. 21-3, ¶ 114).

- Published biographies of candidates for various board positions replete with spelling errors that were not in the candidates' original submissions. (Doc. 21-3, ¶ 115-122).

The Court concludes that Defendant has shown legitimate, uncontroverted, non-discriminatory and non-pretextual reasons why it terminated Plaintiff's employment. Accordingly, the motion shall be granted insofar as Defendant seeks dismissal of Plaintiff's sex discrimination claims.

---

[6] The reasons noted herein are merely a representative sample of the reasons cited by Defendant.

## Sexual Harassment Claim

"Title VII prohibits sexual harassment that takes the form of a tangible employment action, such as . . . the creation of a hostile or abusive working environment." *Lauderdale v. Texas Dept. of Criminal Justice*, 512 F.3d 157,162 (5th Cir. 2007) *citing* 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case of sexual harassment, Plaintiff must satisfy the following four elements: (1) that she belongs to a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a "term, condition or privilege of employment." *Lauderdale*, at 163-64. To satisfy the fourth element, a plaintiff must show both that the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and that the work environment is "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* Courts look to the totality of the circumstances to determine if an environment is hostile or abusive, including:

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; ... whether it unreasonably interferes with an employee's work performance, and whether the complained of conduct undermined the plaintiff's workplace competence. Title VII, however, is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'

11

*Lauderdale*, at 163 (internal citations omitted).

Plaintiff alleges that Hunt sexually harassed her on five occasions: (1) in December of 2006[7], Hunt told others that Plaintiff's golf skirt was too short and said "she shouldn't be wearing things like that." (doc. 21-3, ¶ 59); (2) in October of 2007, Hunt again commented to others regarding Plaintiff's apparel (she was wearing a Hooter's Restaurant t-shirt at a staff meeting and local president's meeting) (doc. 21-3, ¶ 85); (3) in October 2007, Hunt investigated a report that Plaintiff held a caricature of Bobby Jindal to her chest as if she were breast feeding; Plaintiff denied the allegation, and, when asked, Hunt refused to reveal the source of the report (doc. 21-3, ¶ 86); (4) in April 2006, Hunt shot Plaintiff "the bird" in a manager's meeting in response to something she said (doc. 21-3, ¶ 41); and (5) Hunt used profanity on many occasions, but it was not directed at Plaintiff (doc. 21-3, ¶ 103, 105). As a woman, Plaintiff satisfies the first element; however, Plaintiff has set forth no evidence to satisfy the second, third, or fourth elements with regard to the five incidents. Even if she satisfied any more of the remaining elements, Title VII requires Plaintiff to satisfy all four of the elements to establish a *prima facie* case of sexual harassment.

Accordingly, Plaintiff's sexually harassment claims shall be dismissed.

---

[7] As noted, *supra*, any claim of conduct that allegedly occurred prior to February of 2007 is time-barred and will not be considered by the Court.

## Intentional Infliction of Emotional Distress ("IIED") Claim

The basis for the tort of IIED is La. Civ. Code art. 2315, and the Supreme Court has recognized the cause of action in a workplace setting. *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017 (La. 2000); *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). Though Louisiana recognizes a cause of action for IIED in a workplace setting, the jurisprudence has limited the cause of action to:

> cases which involve a pattern of deliberate, repeated harassment over a period of time. The distress suffered by the employee must be more than a reasonable person could be expected to endure. Moreover, the employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry.

*Nicholas*, 765 So.2d at 1026-27. For example, Louisiana courts have found that acts taken together, such as an employer's daily improper sexual comments and advances, threatened physical violence, verbal abuse, continued abuse of an employee who suffered from depression, an attempt to run over an employee with a forklift, and five years of profanity-filled tirades, rose to the level of extreme and outrageous conduct. *Id.*, at 1027-28. "The distress suffered must be such that no reasonable person could be expected to endure it." *White*, at 1210.

For a plaintiff to recover for IIED, she must establish three elements: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White*, 585

13

So. 2d at 1209. To satisfy the first element, Defendant's conduct must be "truly outrageous." *Nicholas*, 765 So.2d at 1024. The Supreme Court has observed that "conduct which is merely tortuous [sic] or illegal does not rise to the level of being extreme and outrageous." *Id.*, at 1025. Moreover, a claim for IIED can only be sustained where the actor "desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct." *White*, at 1210.

Plaintiff alleged that Hunt intentionally inflicted emotional distress upon her when: (1) he allegedly commented that LAE's insurance had gone up and said "isn't that right, Jessica" in August 2006; (2) Hunt allegedly commented on anniversary flowers Plaintiff's husband sent, stating he could not believe anyone would marry in August in Louisiana and that "they must be f---ing stupid" in August of 2006; (3) Hunt allegedly lied to Plaintiff when he told her that the Executive Committee discussed and complained about her in the September 2007 meeting; (4) Hunt "cussed" and screamed at Plaintiff and belittled everything she did; and (5) Hunt allegedly terminated Plaintiff without providing a reason for the termination (doc. 25, p. 75 *citing* discovery documents).

The Court concludes that Hunt's actions were not "extreme and outrageous" such as to satisfy the first element of IIED under to Louisiana law. Furthermore, Plaintiff did not present evidence that Hunt intended to cause her severe emotional distress. Even if Plaintiff had submitted evidence to satisfy the

14

first element, she is unable to prove the second two elements as required by Louisiana law. Accordingly, Plaintiff cannot prove the elements of IIED.

Accordingly, after viewing the facts presented in the light most favorable to the Plaintiff and drawing all reasonable inferences in her favor, the Court concludes that she has failed to set forth facts from which a reasonable fact finder could conclude that Defendant intentionally discriminated against plaintiff on the basis of gender, sexually harassed her, or inflicted her with emotional distress.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment (doc. 21), filed by Defendant is hereby **GRANTED,** and judgment shall be entered in favor of Defendant, dismissing this action.

Baton Rouge, Louisiana, August 17, 2011.

BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

15

Case 3:08-cv-00573-BAJ -CN   Document 42   08/19/11   Page 15 of 15